UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


John A. Ledoux, Jr.

     v.                          Civil No. 17-cv-707-JD
                                           Opinion No. 2018 DNH 120
Acting Commissioner,
Social Security Administration


O R D E R

John A. Ledoux, Jr. seeks judicial review, pursuant to 42
U.S.C. § 405(g), of the Acting Commissioner's most recent
decision, denying his application for disability insurance
benefits.[1]  Ledoux contends that the Administrative Law Judge
("ALJ") erred in weighing the medical opinion evidence and in
reviewing other record evidence, erred in assessing his residual
functional capacity, and lacked substantial evidence to support
his decision because of an incomplete hypothetical posed to the
vocational expert.  Ledoux also asks the court to remand for an
award of benefits only.  The Acting Commissioner moves to
affirm, and, in the alternative, opposes the request to remand
for an award of benefits.

---

[1] As explained in more detail below, this is the fourth time
Ledoux has sought judicial review following unfavorable
decisions.  Following each prior review, the case was remanded
for further proceedings.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). Substantial evidence is "more than a scintilla of evidence" but less than a preponderance of the evidence. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks omitted). When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## Background

Ledoux applied for disability insurance benefits and supplemental security income in April of 2007. After the applications were denied and an ALJ found that Ledoux was not

disabled, he sought judicial review.  In January of 2011, the Commissioner and Ledoux submitted a joint assented-to motion to remand the case for further proceedings.

The same ALJ held a second video hearing and issued a decision on March 1, 2012, that Ledoux was not disabled.  Ledoux again sought judicial review.  Because the administrative files were not available, the decision was vacated and the case was remanded.

On remand, a different ALJ held another video hearing, and issued a decision on April 24, 2015, finding that Ledoux was not disabled through his last insured date of March 31, 2011, but had become disabled after October 24, 2012, based on the Medical-Vocational Guidelines because his age category changed to advanced age.  He was awarded supplemental security income beginning on February 1, 2013.  Ledoux sought judicial review of the unfavorable part of that decision, which was reversed and remanded in July of 2016.

In response, the Appeals Council directed the ALJ to consider whether Ledoux had transferable skills from his past work and to reevaluate the opinion evidence from the Occupational Therapist Lynn Chauvette and from the state agency consultant, Dr. Louis Rosenthall.  The ALJ held a fourth video hearing with testimony from Ledoux and a vocational expert.  In September of 2017, the ALJ again found that Ledoux was not

disabled from his alleged onset date of June 6, 2017, through October 23, 2012, when his age category changed. Ledoux again sought judicial review.

Most of the medical evidence was summarized in the court's prior decision, Ledoux v. Acting Commissioner, 13-cv-530-JD (D.N.H. July 6, 2016) (doc. no. 17), and will not be repeated here. In summary, Ledoux had back pain in 2006 that led to surgery with L3-L5 disc fusion in July of 2007. After surgery, Ledoux's back pain and associated limitations improved. He had a heart attack in October of 2008, and underwent a surgical procedure to place a stent in his coronary artery.

Physical Therapist Ernest Roy did a functional capacity evaluation of Ledoux in August of 2007, right after his surgery. Roy could not do several tests because the surgery was so recent. Roy found that Ledoux could do light work on a full-time basis but was severely restricted in his mobility for stooping, bending, and crouching. State agency consultant Dr. Akbar N. Sadri reviewed Ledoux's records in March of 2008 and concluded that Ledoux could do light work on a full-time basis but was limited to occasionally doing postural activities.

Ledoux fell in January of 2009 and continued to report increased back pain after the fall. Testing revealed new degenerative disc disease issues, and his subsequent medical treatment notes document pain.

4

In September of 2009, Ledoux saw Dr. Umashankar, a neurologist, for an evaluation of his lower back pain. Ledoux's physical examination showed normal results except for some diminished reflexes in his arm and sensory deficits in his knees. Dr. Umashankar wrote in his treatment notes that he assessed Ledoux with failed low back syndrome and that Ledoux could have mild peripheral neuropathy. He noted that Ledoux could not lift more than twenty pounds and could not bend forward or sideways. Dr. Umashankar also wrote that Ledoux would not be able to return to his former work as a carpenter.

Ledoux's primary care physician, Dr. Hazard, referred him to occupational therapist Lynn Chauvette for a functional capacity evaluation, which was done in January of 2010. Chauvette found that Ledoux could work at a sedentary exertional level but could not maintain even part-time work because he would need to change position so frequently due to pain. She also found that Ledoux could never do postural activities such as balancing, bending, stooping, crawling, or kneeling and that he was limited to occasionally doing activities that require dexterity such as fingering, grasping, pinching and reaching forward. In April of 2010, Chauvette provided a letter that clarified Ledoux could not work at the sedentary level because of pain, that he would need medical supervision if he returned

to work, and that a treating source had cleared Ledoux to lift more than was included at the sedentary capacity.

The medical records through 2010 continue to document back pain. In August of 2010, Dr. Hazard ordered an MRI of Ledoux's neck because of pain in his neck and numbness in his left arm. The MRI showed mild foraminal narrowing at C3-4 and C4-5; disc extrusion, canal narrowing, and moderate to severe foraminal narrowing at C5-6; and posterior disc-osteophyte complex with posterior bony ridge, moderate stenosis, and moderate foraminal narrowing at C6-7. On September 2, Dr. Hazard found that the cervical disc pathology shown on the MRI was the reason for Ledoux's neck and arm symptoms. Dr. Hazard also reviewed Occupational Therapist Chauvette's functional capacity assessment and wrote that her report "seems credible."

Dr. Louis Rosenthall reviewed the record in November of 2010 and found that Ledoux could do sedentary work with occasional postural activities. Treatment notes after his last insured date in March of 2011 show continued back pain and radiating pain.

In November of 2012, state agency consultant Dr. Burton Nault reviewed the medical records from August of 2012 through October of 2013 for a supplemental security income application that Ledoux had filed. Dr. Nault found that Ledoux had the ability to stand and or walk for three hours and sit for about

six hours, to lift and carry twenty pounds occasionally and ten pounds frequently, and to do postural activities occasionally.

The ALJ issued a decision on September 22, 2017, and again concluded that Ledoux was not disabled between April of 2007 and his date last insured, March 31, 2011. The ALJ found that Ledoux had severe impairments due to degenerative disc disease of the lumbar and cervical spine and coronary artery disease. He assessed a residual functional capacity to do sedentary work with the ability to alternate between sitting and standing at will, occasionally do postural activities, and a need to avoid climbing and workplace hazards. Based on the vocational expert's testimony, the ALJ found that Ledoux could not return to his former work but that other work existed that he could do.

## Discussion

Ledoux contends that the Acting Commissioner's decision must be reversed because it is the result of the following errors:

> (1) the ALJ erred in failing to adopt Occupational Therapist Chauvette's opinion that he was disabled by January of 2010,
> (2) the ALJ again improperly relied on opinions of state agency consultants,
> (3) the treating physician opinions do not support the ALJ's functional capacity assessment,
> (4) the medical record supports a finding that Ledoux's symptoms worsened after 2009,
> (5) the ALJ incorrectly assessed Ledoux's postural limitations,

> (6) the ALJ failed to consider his headaches,
> (7) the record does not support a finding that Ledoux could work full time, and
> (8) the hypothetical posed to the vocational expert was incomplete.

Ledoux asks that the court to award benefits rather than remanding the case for further administrative proceedings. The Acting Commissioner moves to affirm, and, alternatively, in the event the decision were reversed, moves to remand for further proceedings but not an award of benefits.

In this case, as in most cases in which claimants seek social security benefits, "[t]he key question before the ALJ was whether [the claimant] was disabled." Coskery v. Berryhill, --- F.3d ---, 2018 WL 2474171, at *1 (1st Cir. June 4, 2018). To determine whether a claimant is disabled, the ALJ engages in a five-step inquiry. Id. (quoting 20 C.F.R. §§ 404.1520(a)(4)(i)- (v)). The claimant bears the burden through the first four steps to show that he is disabled, while the Acting Commissioner bears the burden at the fifth step to provide evidence of specific jobs that the claimant can perform. Purdy, 887 F.3d at 9 -10. For purposes of the fourth and fifth steps of the inquiry, the ALJ must assess the claimant's residual functional capacity to work. §§ 404.1520(a)(4)(iv) & (v).

A.  Residual Functional Capacity

     All eight of Ledoux's claims for review challenge the ALJ's
residual functional capacity assessment in which the ALJ found
that Ledoux retained the capacity to do sedentary work with the
option of changing positions at will and certain other
restrictions.  The residual functional capacity assessment is a
finding of the most a claimant can do in a work setting despite
his limitations caused by impairments.  20 C.F.R. §
404.1545(a)(1).  The residual functional capacity measures the
maximum amount a claimant can do "in an ordinary work setting on
a regular and continuing basis . . . [meaning] 8 hours a day,
for 5 days a week, or an equivalent work schedule." Assessing
Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996
WL 374184, at *2 (July 2, 1996).  On appeal, the residual
functional capacity assessment is reviewed to determine whether
it is based on proper legal standards and is supported by
substantial evidence.  Nguyen v. Chater, 172 F.3d 31, 35-36 (1st
Cir. 1999).

     Ledoux contends that the ALJ's residual functional capacity
assessment lacks substantial evidence in support because the ALJ
erred in considering the medical opinion evidence, incorrectly
evaluated his impairments and limitations, lacked evidence of an
ability to work full time, and, as a result, proposed an
incomplete hypothetical to the vocational expert.  The Acting

Commissioner argues that the ALJ properly determined Ledoux's residual functional capacity and that substantial evidence supports the determination that Ledoux was not disabled during the relevant period.

B.  Opinion Evidence

The first three errors assigned by Ledoux challenge the ALJ's review and assessment of the opinion evidence in the record.  Ledoux argues that Occupational Therapist Chauvette's opinion was the best supported in the record so that the ALJ erred in not giving it controlling weight.  Ledoux also argues that the opinions from treating physicians do not support the ALJ's functional capacity assessment and that the ALJ erred in relying on the opinions of state agency consultants.  As a result, Ledoux contends, the record lacks substantial evidence to support the ALJ's residual functional capacity finding.

An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).[2]  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and

_____

[2] As the Acting Commissioner notes, the Commission has amended the applicable rule and other guidance on medical opinion evidence, but the changes do not apply here.  See 20 C.F.R. § 404.1520c; Purdy, 2018 WL 1601791, at *4, n.8 (discussing § 416.920c under Title XVI); see also Doc. no. 12 at *6, n.6.  Ledoux does not argue otherwise.

severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1).

Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion. § 404.1527(c). Acceptable medical sources include licensed physicians and certain other licensed medical providers, but occupational therapists are not acceptable medical sources. 20 C.F.R. § 404.1513; Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, SSR 06-3p, 2006 WL 2329939 (rescission eff. Mar. 27, 2017)[3]; Regalado v. Colvin, 2016 WL 4775525, at *6 (D.N.H. Sept. 14, 2016).

The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources. § 404.1527(e); Ormon

---

[3] "The commissioner rescinded SSR 06-03p effective for claims filed on or after March 27, 2017. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263, 15263 (Mar. 27, 2017)." Jessica B. v. Berryhill Performing the Duties & Functions Not Reserved to the Comm'r of Soc. Sec., Defendant, No. 1:17-CV-00294-NT, 2018 WL 2552162, at *6 (D. Me. June 3, 2018).

v. Astrue, 497 Fed. Appx. 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996). The opinions of state agency consultant physicians, however, must be supported by the record to provide substantial evidence for an ALJ's findings. SSR 96-69, at *2. If the state agency consultant reviewed only part of the record, the opinion cannot provide substantial evidence to support the ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations. See McGowen v. Colvin, 2016 WL 1029480, at *6 (D.N.H. Mar. 15, 2016) (citing cases); see also Avery v. Acting Comm'r, Social Security Admin., 2018 WL 2376507, at *4 (D.N.H. May 24, 2018).

1.  Occupational Therapist Chauvette

Although an occupational therapist is not an acceptable medical source and cannot provide a medical opinion to diagnose an impairment, information, including an opinion, from an occupational therapist may provide evidence "to show the severity of the [claimant's] impairment(s) and how it affects the [claimant's] ability to function." SSR 06-3p, at *2 & *3; see also Couitt v. Astrue, 2012 WL 1114295, at *5 (D.N.H. Apr.

3, 2012).  Opinions from sources, who are not acceptable medical sources, are evaluated using the same criteria that apply to acceptable medical source opinions.  Id. at *4-*5.  An ALJ must consider those opinions and explain the reasons for the weight given to them so that the court, on review, can follow the ALJ's reasoning.  SSR 06-3p, at *6.

Based on her examination, Chauvette determined that Ledoux could do work at the sedentary exertional level with certain limitations in his ability to do postural and manipulative activities.  She also found, however, that Ledoux could not sustain work on even a part-time basis.  Chauvette found that Ledoux was limited to less than part-time work because of his need to change positions due to pain.

The ALJ considered Chauvette's opinion and stated that he gave less than great weight to her finding of Ledoux's exertional capacity at the sedentary level and some weight to her objective findings about his limitations.  Nevertheless, the ALJ ultimately assessed Ledoux at the sedentary work capacity. The differences in their assessments are whether Ledoux was capable of full-time work, whether he had manipulative limitations, and whether he was able to occasionally do postural activities.

a. Ability to Work

Ledoux correctly notes that the ALJ misstated Chauvette's opinion by ascribing the limitation to less than part-time work to both pain and manipulative limitations. Chauvette did not find that manipulative limitations would limit Ledoux to less than part-time work. Instead, she found based on her examination and observations that back pain would limit Ledoux to less than part-time work.

The ALJ discounted Chauvette's finding that Ledoux could not sustain even part-time work as being beyond Chauvette's expertise. Opinions even from medical sources that a claimant is unable to work are not entitled to any particular significance because that issue is reserved to the Commissioner. 20 C.F.R. § 404.1527(d); Gillen v. Colvin, 2017 WL 775785, at *8 (D.N.H. Feb. 28, 2017) (opinion about inability to do full time work not entitled to special significance); Bailey v. Berryhill, 2017 WL 6590546, at *9 (D. Me. Dec. 26, 2017) (opinions about claimant's ability to work less than full time not entitled to special significance); Lemire v. Colvin, 2016 WL 3166836, at *10 (D.R.I. May 4, 2016) (treating physician's opinion that claimant was unable to engage in full-time employment was not entitled to any significance); Greenlief v. Colvin, 2015 WL 4663593, at *10 (D.R.I. Aug. 6, 2015) (claimant acknowledging that treating physician's opinion that she could not work full time because of

pain was correctly discounted).  Therefore, the ALJ supportably decided that Chauvette's opinion that Ledoux could not sustain even part-time work was not binding.

Nevertheless, her opinion does provide evidence of the severity of Ledoux's pain.  The ALJ's reasons for discounting that aspect of the opinion were that her opinion was based on only one examination in contrast to Ledoux's treating physicians' opinions and because neurological examinations during the same time period were normal.  The ALJ also asserts that Chauvette's opinion is inconsistent with Dr. Umashankar's note from September of 2009.

Dr. Umashankar, who the ALJ identified as Ledoux's treating physician, is a neurologist who did a neurological examination in September of 2009 and included a brief functional capacity assessment.[4]  Dr. Umashankar's notes include some normal test results and strength findings but also diminished sensation in

_____

[4] Two years earlier in August of 2007, Ledoux's treating neurosurgeon, Dr. Yogish Kamath, provided a short opinion about Ledoux's functional capacity.  That was just a month after Ledoux's spinal surgery and before Ledoux's symptoms increased in early 2009.  The ALJ interpreted Dr. Kamath's statement to allow Ledoux to work at the light to sedentary exertional level with some postural limitations.  The ALJ gave the opinion weight to the extent it did not limit Ledoux to less than part-time work but also noted that the opinion lacked a function-by-function analysis, which entitled it to less weight.  Again, the opinion did not address an ability to do full time work, and Dr. Kamath lacked the benefit of subsequent medical evidence, including Occupational Therapist Chauvette's evaluation.

the legs.  He found that Ledoux had failed lower back syndrome,
was capable of lifting up to twenty pounds, and could not bend
forwards or sideways.  Dr. Umashankar provided no opinion about
Ledoux's ability to work.  Over all, Dr. Umashankar's note is
not inconsistent with Chauvette's opinion.

The cited evidence from Dr. Hazard, Ledoux's treating
physician, is dated October 6, 2009, and is from a consultation
appointment requested by Dr. Umashankar.  Dr. Hazard found that
Ledoux's flexion from the waist was very limited due to pain, at
less than 5%.  Leg lifting while seated was not restricted, and
his "power screen" was done well.  Dr. Hazard reviewed the
results of a previously done MRI that showed the three-level
fusion in his back and "a large meningocele in the posterior
aspect of his decompressed levels."  Admin. Rec. at 1062.

Dr. Hazard further wrote that Ledoux had a "long-standing
pattern of back and bilateral leg pain and numbness" and that
the pattern had been "complicated particularly over the last
year by a sense of mounting pressure in his lower back and he
does have this meningocele."  Id.  He recommended a
neurosurgical review, "particularly regarding pros and cons of
correcting this meningocele."  Id.  If surgery was not advised,
then Dr. Hazard thought Ledoux should have a functional
assessment followed by rehabilitation.  Occupational Therapist
Chauvette did the functional assessment in January of 2010, on

16

referral from Dr. Hazard, and Dr. Hazard reviewed her report and found it reasonable in September of 2010.  Dr. Hazard's notes are not inconsistent with Chauvette's opinion.

The ALJ also stated that in January of 2010, when Chauvette did the functional testing, Ledoux reported being "relatively active, playing with his children, driving, and running errands."  He did not give a record citation for that evidence. The ALJ stated that "one would not expect" that level of activity from someone who could not work even part-time.  The ALJ did not provide a sufficient explanation based on daily activities to allow review.  See also Rucker v. Colvin, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (noting that daily activities may be considered to assess the severity, persistence, and effects of pain and other symptoms, daily activities do not establish the ability to do full time work).

b.  Manipulative and Postural Limitations

Chauvette found restrictions in Ledoux's functional capacity to do manipulative and postural activities, which the ALJ did not credit.  The ALJ did not specifically explain why he did not give weight to the postural limitations that Chauvette found.  To the extent he was relying on Dr. Umashankar's note in September of 2009, he seems to have misinterpreted the note. Dr. Umashankar wrote that Ledoux should not bend forward or

sideways, which supports Chauvette's opinion.  To the extent Dr. Umashankar would have allowed weight up to twenty pounds, the ALJ agreed with Chauvette that Ledoux was limited to ten pounds. Dr. Hazard also found back pain and limited flexion.

With respect to manipulative limitations, the ALJ stated: "There is no evidence in the record until approximately 2016 of any upper extremity impairments, and certainly nothing to reflect difficulty using his arms and hands in 2010, including all of the other medical opinions in the record."  Admin. Rec. at 3.  Contrary to the ALJ's view and as is discussed further below, Dr. Hazard documented in his treatment notes in August of 2010 that Ledoux had been experiencing left arm pain and numbness.  Dr. Hazard ascribed that to a cervical spine condition that was shown in an MRI done in August of 2010. Further, as noted above, Dr. Hazard found Chauvette's assessment to be reasonable.  Therefore, the record does include evidence from 2010 that would support Chauvette's assessment.

The ALJ did not adequately explain the weight he gave to Chauvette's functional capacity assessment.  Nevertheless, the ALJ's functional capacity assessment might be affirmed if it is supported by other substantial evidence in the record.

## 2. <u>Dr. Sadri and Dr. Masewic</u>

The ALJ again gave great weight to the opinions of state agency consultants, Dr. Sadri and Dr. Masewic.  The Acting Commissioner contends that those opinions provide substantial evidence to support the ALJ's residual functional capacity assessment and argues that the ALJ properly chose to follow those opinions.  Ledoux contends that because the court previously found that neither opinion provided substantial evidence to support the ALJ's residual functional capacity assessment, they cannot do so now.[5]

In the Acting Commissioner's prior decision, the ALJ mistakenly identified Dr. Sadri as Ledoux's treating orthopedic surgeon and gave the opinion great weight without mentioning the subsequent medical evidence.  In the current decision, the ALJ corrected his mistake about Dr. Sadri's status but did not address the subsequent medical evidence.  As a result, Dr. Sadri's opinion cannot serve as substantial evidence to support

---

[5] Ledoux's reliance on the court's previous order might have been based on the rule of mandate and/or the law of the case doctrine.  Sullivan v. Hudson, 490 U.S. 877, 885-86 (1989); Figueroa v. Berryhill, 2018 WL 2176386, at *2-*3 (C.D. Calif. May 10, 2018); Shered v. Berryhill, 2018 WL 1993393, at *3 (N.D. Ill. Apr. 27, 2018); Smith v. Berryhill, 2018 WL 1633822, at *2 (W.D. Wash. Apr. 5, 2018); Ruiz v. Berryhill, 2018 WL 1517077, at *5-*7 (N.D. Ind. Mar. 28, 2018); Porter v. Berryhill, 2018 WL 1183400, at *10 (W.D. Mo. Mar. 7, 2018); Simpson v. Colvin, 2 F. Supp. 81, 91 (D. Mass. 2014).  Because Ledoux raises neither theory, however, the court will not conduct that analysis sua sponte.

the ALJ's decision.  See Giandomenico v. U.S. Soc. Sec. Admin.,
Acting Comm'r, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

In discussing Dr. Masewic's opinion in the current
decision, the ALJ acknowledged that additional medical records
were generated after that opinion in July of 2007.  The ALJ
stated, without explanation, that "later submitted records
continued to show similar limitations of the claimant, without
significant worsening until after the relevant time period."
Admin. Rec. at 28.  Given evidence that Ledoux's back symptoms
worsened in January of 2009 and that he developed cervical spine
issues by August of 2010, that statement, standing alone, does
not provide a sufficient explanation to carry the burden of
clearly showing that the later records show no greater
limitations.  Id.

Therefore, the Acting Commissioner has not shown that
either Dr. Sadri's opinion or Dr. Masewic's opinion provides
substantial evidence to support the ALJ's residual functional
capacity assessment.

### 3.  Dr. Louis Rosenthall

The ALJ also relied on the opinion of Dr. Rosenthall, a
state agency consultant, who reviewed Ledoux's records in
November of 2010.  Dr. Rosenthall found by checking boxes on a
form that Ledoux was capable of working at the sedentary

exertional level with the additional restriction of only occasionally doing certain postural activities. The Acting Commissioner contends that Dr. Rosenthall's opinion provides substantial evidence to support the ALJ's residual functional capacity assessment. Ledoux contends that the opinion is precluded by the court's prior order and is wrong.

### a. Prior Order

In the prior order, 13-cv-530-JD (document no. 17), the court found that Dr. Rosenthall's opinion did not provide substantial evidence to support the Acting Commissioner's decision because the ALJ had not relied on or even discussed the opinion. Id. at 18 (citing High v. Astrue, 2011 WL 941572, at *6 (D.N.H. Mar. 17, 2011)). Ledoux misunderstands the prior order, arguing that the court previously held that Dr. Rosenthall's opinion could not provide substantial evidence because of "mistakes and omissions in his evaluation of the record." Instead, the court held that the Acting Commissioner had not shown that the general rule for administrative review did not apply to preclude consideration of Dr. Rosenthall's opinion. The court also noted that Ledoux pointed to mistakes and omissions in Dr. Rosenthall's opinion.

Now, in the most recent decision, the ALJ did discuss and rely on Dr. Rosenthall's opinion, giving it great weight.

Therefore, the Acting Commissioner appropriately addresses the opinion here.

### b. Opinion

On the evaluation form, Dr. Rosenthall checked boxes to indicate that Ledoux could lift up to ten pounds occasionally and frequently, could stand and/or walk for six hours in an eight hour day, could sit for six hours in an eight hour day, and had no limits in his ability to push and pull. Dr. Rosenthall also indicated that Ledoux could occasionally do all postural activities and had no manipulative limitations. Ledoux contends that Dr. Rosenthall's opinion was not entitled to the great weight given by the ALJ.

Dr. Rosenthall checked a box to show that there was no medical source statement in the file regarding Ledoux's physical capacity. Instead, Dr. Rosenthall relied on the residual functional capacity assessment done by state agency physician Dr. Masewic in July of 2007 and the ALJ's decision, denying benefits, issued in April of 2010. Dr. Rosenthall also cited medical records from Ledoux's treating physician, Dr. Hazard, and records from "f/n/u (Ratliffe 8/2/10)."[6] Ledoux contends

_____

[6] Dr. Hazard's treatment notes from August 10, 2010, cited by Dr. Rosenthall, document left arm pain and numbness, which caused Dr. Hazard to order an MRI done on August 13. The MRI showed narrowing and disc extrusion in the cervical spine. Dr. Rosenthall noted those results but nevertheless found no

that Dr. Rosenthall's opinion does not provide substantial evidence to support the ALJ's residual functional capacity assessment because it was based on an incomplete record and because he improperly assessed Ledoux's postural limitations. The Acting Commissioner contends that the ALJ properly gave Dr. Rosenthall's opinion great weight "because of his expertise in Social Security regulations" and because his opinion was consistent with other evidence.

### i. Masewic Opinion

As is discussed above, the court previously found that Dr. Masewic's July 2007 opinion could not provide substantial evidence to support the ALJ's decision because it was based on Ledoux's condition before he had back surgery. Dr. Masewic did not review the years of medical records that were generated after surgery and during the relevant period. For the same reason, Dr. Rosenthall's reliance on Dr. Masewic's opinion undermines his opinion because it is not based on a complete record.

---

manipulative limitations and no limitation in Ledoux's ability to push and pull hand controls, apparently based on some normal examination results recorded by Dr. Hazard. Dr. Rosenthall's assessment does not appear to be supported by Dr. Hazard's treatment notes, particularly Dr. Hazard's notes from his meeting with Ledoux on September 2, 2010.

### ii. Prior ALJ Decision

Dr. Rosenthall's reliance on an ALJ's prior decision, dated April 6, 2010, further undermines his opinion because that decision was vacated on January 24, 2011. On remand, the Decision Review Board directed the ALJ to obtain additional evidence and to conduct a hearing. As a result, the ALJ's decision does not provide evidence to support Dr. Rosenthall's evaluation.

### iii. Other Supporting Explanation

The form completed by Dr. Rosenthall required him to check boxes to indicate his assessment of functional capacity. The form also asked for explanations in places, notably for the postural assessments, which were left empty. The section for discussing the claimant's symptoms was also left blank. Opinions expressed by checking boxes on a form without accompanying explanations "are entitled to relatively little weight." Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); see also 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

At the end of the form, in the section titled "additional comments," Dr. Rosenthall noted that Ledoux had had persistent lower back pain since surgery in 2007. He cited Dr. Hazard's treatment notes from August 10, 2010, which document left arm pain and numbness. Dr. Hazard ordered an MRI done on August 13, which showed narrowing and disc extrusion in the cervical spine, and Dr. Rosenthall acknowledged disc herniation and the need for further treatment. He also noted a record pertaining to Ledoux's heart condition.

After the cited records, Dr. Rosenthall provided a summary of Ledoux's activities of daily living with the date of September 29, 2010. He noted that Ledoux lives alone, has custody of his three children every other week, does personal care, prepares meals, shops, and can leave home alone. He further noted that Ledoux does not need a device to walk. Dr. Rosenthall provided no analysis of the import of Ledoux's activities or any conclusion drawn from them.

Despite the cited medical records, Dr. Rosenthall found no manipulative limitations or restrictions in Ledoux's ability to push and pull hand controls, and allowed occasional postural activities without a clear explanation for those results. Dr. Rosenthall's assessment does not appear to be supported by Dr. Hazard's record, particularly Dr. Hazard's notes from his meeting with Ledoux on September 2, 2010. In addition, Dr.

Rosenthall does not mention Occupational Therapist Chauvette's assessment done in January of 2010.

### 4. Dr. Nault

Dr. Nault reviewed records and provided an opinion about Ledoux's residual functional capacity for the period from August of 2012 through October of 2013. That period is after Ledoux's date last insured and, therefore, is not relevant to the disability issue here. The ALJ, nevertheless, relied on Dr. Nault's opinion based on the ALJ's mistaken understanding that Dr. Nault had reviewed Ledoux's records beginning in 2007.

Dr. Nault did not review any records from the relevant period and did not review Chauvette's opinion. He was not asked to and did not give an opinion about Ledoux's functional capacity during the relevant period. The ALJ states that Dr. Nault's opinion is consistent with "the medical opinions of record throughout the entire relevant period," but only references Dr. Umashankar's treatment notes from September 11, 2009. As a result, Dr. Nault's opinion does not provide substantial evidence to support the ALJ's residual functional capacity assessment.

## C. Summary

The ALJ failed to explain adequately or accurately the weight he gave to Chauvette's residual functional capacity

assessment.  The other opinions the ALJ relied on to assess
Ledoux's residual functional capacity do not provide substantial
evidence with respect to Ledoux's ability to do postural and
manipulative activities.  There may also be a question about the
effect of Ledoux's back pain on his ability to sustain full-time
work, even with an option to change position at will.  Because
the ALJ's assessment of the opinion evidence, as discussed,
requires remand, the court does not address the remaining issues
raised by Ledoux in support of his motion to reverse and remand.

D.  <u>Remand</u>

     The long history of this case through four judicial reviews
and remand proceedings raises serious concerns about the
efficacy of the administrative process.  Despite that path, this
case does not present the rare circumstance when a district
court may remand a case for an award of benefits.

     In the First Circuit, a direction to the Acting
Commissioner to award benefits is rarely appropriate.
"[O]rdinarily[,] the court can order the agency to provide the
relief it denied only in the unusual case in which the
underlying facts and law are such that the agency has no
discretion to act in any manner other than to award or to deny
benefits."  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).
That is, a court may order the agency to award benefits only

"where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence." Id. Otherwise, "when the agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." Id.

Here, it remains unclear whether Ledoux should have been assessed with manipulative limitations and greater restriction in his ability to do postural activities than the ALJ found. It is also unclear whether the level of pain Chauvette found during her examination would preclude work or could be accommodated by the option to change positions at will. Ledoux's attorney's questions to the vocational expert at the hearing demonstrate that bending and dexterity could be required in the jobs that were identified so that significant limitations in those areas might preclude the identified jobs. As a result, based on the current record, the Acting Commissioner has not carried her burden at Step Five to show that there are jobs that Ledoux could do.

The court recommends that on remand the case be assigned to a different ALJ who can bring a fresh perspective to the extensive administrative record and who might enlist the help of an independent medical expert to review the record, with a particular focus on Ledoux's residual functional capacity in

light of the effects of pain and his ability to do postural and
manipulative activities during the relevant period.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse
and remand (document no. 8) is granted to the extent the case is
remanded for further administrative proceedings, as discussed in
this order, and is otherwise denied.  The Acting Commissioner's
motion to affirm (document no. 12) is denied.  This is a remand
under sentence four of § 405(g).

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

June 12, 2018

cc:  Ruth Dorothea Heintz, Esq.
     Robert J. Rabuck, Esq.